**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 13 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| SUDIR THAPA, | No.    19-70061 |
| Petitioner, | Agency No. A094-961-738 |
| v. |  |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM[*] |
| Respondent. |  |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 9, 2021[**]
Pasadena, California

Before:  W. FLETCHER, WATFORD, and HURWITZ, Circuit Judges.

Sudir Thapa, a native and citizen of Nepal, petitions for review of the Board

of Immigration Appeals' decision dismissing his appeal from an immigration

judge's (IJ) denial of his application for protection under the Convention Against

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Torture (CAT).[1]  An applicant may be eligible for CAT protection when he or she can show "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."  8 C.F.R. § 1208.16(c)(2).  Because substantial evidence supports the Board's determination that Thapa did not meet this standard, we deny Thapa's petition for review.

    **1.**  The Board correctly concluded that the past harm Thapa suffered did not rise to the level of torture.  The IJ found, and the Board agreed, that while the beatings and kidnappings Thapa endured at the hands of Maoists rose to the level of persecution, they did not satisfy the higher bar for torture.  Under CAT, torture requires the intentional infliction of "severe pain or suffering" and does not include "lesser forms of cruel, inhuman or degrading treatment or punishment."  8 C.F.R. § 1208.18(a).  Thapa contends that the IJ committed factual error when she stated that in each instance of harm, Thapa was "able to walk out to the road, catch a bus, and get himself home and return to work."  Although it is true that after the first beating Thapa was initially taken to the hospital, the IJ did not commit clear error because Thapa was able to take a bus home after he left the hospital.  Nor did the IJ clearly mischaracterize the third incident; Thapa fled on foot from his kidnappers

---

[1] The Board held that Thapa withdrew his applications for asylum and withholding of removal under the Immigration and Nationality Act after conceding that he is statutorily ineligible for those forms of relief as the result of a felony conviction. Thapa does not contest that ruling in his petition for review.

to a friend's house, from where he took a bus home. And the IJ further supported her ultimate legal conclusion that the beatings did not constitute torture with the finding that Thapa did not suffer "any lasting harm or psychological trauma."

**2.** Substantial evidence also supports the Board's finding that there is no clear probability that Thapa would be tortured by or with the acquiescence of government officials if returned to Nepal. The IJ and Board properly relied on country conditions evidence indicating that politically motivated violence of the kind Thapa suffered has "dramatically decreased" since he left the country, as a result of the peace accord signed between the government and the Maoists in 2006. While generalized violence and crime may remain a problem in Nepal, Thapa has not shown any particularized risk of harm. *See Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010). As the IJ and Board reasoned, the Maoists have not shown any continued interest in Thapa since a single inquiry into his whereabouts in 2010.

**PETITION FOR REVIEW DENIED.**